White, Judge,
delivered the opinion of the court. The single question presented by this record, is, whether the plaintiff is entitled to recover the slave in controversy, by virtue of his purchase from Hamilton, or in other words, whether the remainder of a slave, after an estate for life therein, can be sold by execution during the continuance of the life estate.
No case has been shewn on the argument, to prove that the interest of Isaac Bledsoe, (the son,) in this slave, is such an one as has been held a proper subject for seisure and sale by fieri facias. In the case cited from (8 East’s Rep. ) Lord Ellenborough, in delivering the opinion of the court, after stating the nature of the fieri jadas, and venditioni exponas, says, “the language of these writs and returns evidently imports that the goods and chattels which are the subject of them, are property of a tangible nature, capable of manual seisure and of being detained in the sheriff’s hands and custody; and such also, as are conveniently capable of sale and transfer by the sherilf, to whom the writ is directed, for the satisfaction of a creditor. These principles the chief justice of the King’s bench applies to the case before him, and shows that it is not comformable to them.
What is the present easel Was the negro capable of seisure by the sheriff? he was physically so to be sure, but was he legally so ? was he the goods and chattels of the defendant in the execution, (the remainderman Isaac Bledsoe the son?) Catharine Bledsoe, the mother, had a life estate or interest in him, and was entitled to the possession and the use during the whole time of its continuance, for the very nature of her interest being sole, was the exclusive enjoymentof it. A violation of this possession, is a trespass, and a writ authorizing the sheriff to take into his possession the goods and chattels of A. is no authority for taking the goods and chattels of B.
But it may be said that the taking by the sheriff in the *38 present case, is but a temporary matter, and the tenant for life sustains but little, if any, actual injury. But let us pursue the legal mode as it ought to be, and as cases in general actually exist. The sheriff seises the chattel, he keeps it in his possession until the sale thereof and delivery to the vendee; this period between the levy and sale must be at least ten days in every case; is not this an injury to the life estate? and suppose the contingency of no bidders, and that the goods remain in his hands for this defect, which the law recognises, and in such cases directs another writ to issue, authorizing the sheriff to proceed and perfect the execution so commenced, a still greater injury must occur to the tenant for life.
The law cannot sanction such proceedings, or any step which may eventually, and ex directo, lead to them; if the assent of the tenant for life could remove this objection, it is negatived in the present case by the proof: there could not in the present case be a delivery by the sheriff, of the chattel sold, and the writ of jfieri facias contemplates a delivery to the vendee as incident to the present enjoyment of the thing sold. lean find no case of a chattel sold by fieri facias which does not import immediate delivery upon the sale, and immediate enjoyment of the chattel sold.
In the argument of the case of Scott vs. Scoley (8 East’s Rep.) it was advanced on one side by the counsel, that in a case of land, the lessor’s interest, who has made a sub lease may be taken and sold, subject to the right of the sub lessee; and by the counsel on the other side it was said, that it may be admitted that a legal reversionary interest in a chattel, after a sub term for years, is a saleable interest by the sheriff, but it does not follow that an equitable interest is.
This argument was relied on by the counsel for the plain tiff in error, in the present case, as shewing that the remainder of a term for years could be sold on a.fieri faci-as. This argument only applies to the case of a reversion of a term for years, and only shows that what was advanced by the counsel on one side, was not necessary to be controverted on the other, because it was not in point to *39 the case before the court. But there is a'very wide differ-1 . . _ ence between the two. cases of a remainder and a reversion of a term; the latter has no similarity to the former; for where the reversioner is the debtor, the whole term is sold, and in the common and usual way; a rent is reserved to the reversioner on the sub lease, which presently goes to the purchaser, and he is thereby in the actual, immediate reception or enjoyment oí the term; this is not the case with the remainder; it is wholly future, and nothing present. No adjudged case has been cited to show that the remainder of a term for years, could be sold under a fieri facias. The cases in the books cited, are where the whole interest of the lease is sold, and that a present interest and where the lessee was the debtor. See Fleetwood’s Case, 8 Coke 171. Dyer 363 a. and Lord Ch. J. Trebys note thereto.
The most analagous casein the Books, to the presentís, that in Dyer 67 b, note, by Ch. J. Treby from 22 Ed. 4,10 “that beasts let for years cannot be taken in execution for the debt of the lessor. Same case in 10 Viñer 560 pi. 4, which says, that it cannot be done, till after the lease is determined, for, says the Book, the lessor himself could not take them during the year,” and yet the debtor has the property in reversion. This case is considered law by Ch. Baron Comyns. (4 volume of his Digest, page 121.) But if any decided case has gone so far as to say that the remainder of a lease of land is the subject of a sale under the fieri facias, it is very different in its nature from the present case, for in the case of a lease of land, the interest' is certain, and its value fixed by the terms of the lease, so that there needs be no sacrifice of the debtor’s property to the injury of other creditors. But very different is the remainder or reversion of a live chattel; it is apure contingency, a bare possibility, whether it will ever exist or not; on the part of the purchaser it is a perfect hazard; the thing acquired may he of some value, or it may be of no value, for the data by which this may be discovered is not given to man to know. In this absence of all knowledge on the subject,a sale would, in Us *40 principle, be quite a gaming transaction, subversive of good morals, and ruinous in its consequences, and would be a great injury to the rights of other creditors, by the sacrifice of that fund, which,in proper time, might be competent to the satisfaction of all their claims.
The injurious consequences resulting from an extension of the subject matter of an execution to interests like the present, although not furnishing ground to a court to withold its assent, were it established by clear and certain adjudication, yet they deservedly will have their influence in the formation of a precedent, the operation of which may have considerable effect in future cases.
Judgment of the circuit court affirmed.
Haywood, J. dissented.